UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 27, 2017

LETTER TO COUNSEL

        RE:    *Robert Ellentuck v. Commissioner, Social Security Administration*
                Civil No. SAG-16-3884

Dear Counsel:

On December 3, 2016, Plaintiff Robert Ellentuck petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits ("DIB"). [ECF No. 1]. I have considered the parties' cross-motions for summary judgment. [ECF Nos. 13, 14]. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Mr. Ellentuck's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405. This letter explains my rationale.

Mr. Ellentuck filed his claim for DIB on September 24, 2012. (Tr. 188-89). He alleged a disability onset date of June 30, 2010. *Id.* His claim was denied initially and on reconsideration. (Tr. 120-27). A hearing was held on June 4, 2015, before an Administrative Law Judge ("ALJ"). (Tr. 47-88). Following the hearing, the ALJ determined that Mr. Ellentuck was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 13-40). Thereafter, Mr. Ellentuck requested that the Appeals Council review the ALJ's decision. (Tr. 41-43). The Appeals Council denied Mr. Ellentuck's request for review, so the ALJ's 2015 decision constitutes the final, reviewable decision of the Agency. (Tr. 1-4).

The ALJ found that Mr. Ellentuck suffered from the severe impairments of "sleep related breathing disorders, peripheral neuropathy, degenerative disc disease, fibromyalgia, and affective disorders not otherwise specified (20 CFR 404.1520(c))." (Tr. 22). Despite these impairments, the ALJ determined that Mr. Ellentuck retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant could occasionally lift and or carry 20 pounds and frequently lift and or carry 10 pounds; stand or walk for a total of 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; push and/or pull as much as he can lift and or carry; and never climb ladders, ropes, or scaffolds. The claimant has no limits on climbing ramps or stairs and no limits on balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to occasional exposure to hazards such as moving mechanical parts and unprotected heights; frequent

>   interaction with coworkers and supervisors; and occasional interaction with the public. He can constantly understand, remember, and carry out instructions concerning simple, routine tasks; occasionally understand, remember, and carry out instructions concerning complex tasks; constantly make simple decisions; and occasionally make complex decisions.

(Tr. 24). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Ellentuck could perform jobs existing in significant numbers in the national economy, and that, therefore, he was not disabled. (Tr. 32).

Mr. Ellentuck raises two arguments on appeal: (1) that the ALJ failed to apply the proper legal standard in discrediting his credibility and subjective evidence of pain; and (2) that the ALJ erroneously assessed his RFC. [ECF No. 13-1, 3, 5]. These arguments are addressed below.

## I. The ALJ's Credibility Finding

Mr. Ellentuck argues that the ALJ, in finding him "not entirely credible," erred by "fail[ing] to provide any assessment of which of [his] statements he found to be credible, and which he did not." (Tr. 26); [ECF No. 13-1, 3]. Specifically, Mr. Ellentuck relies on *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); and *Bostrom v. Colvin*, 134 F. Supp. 3d 952, 960 (D. Md. 2016), which require the ALJ to "refer specifically to the evidence informing the ALJ's conclusion" in making a credibility determination and to "'articulate which of a claimant's individual statements are credible, rather than [analyzing] whether the claimant is credible as a general matter.'" [ECF No. 13-1, 3-5].

As background, in *Lewis*, the United States Court of Appeals for the Fourth Circuit determined that remand was required, in part, because "[t]he ALJ's decision applied an improper legal standard to discredit [the claimant's] [credibility]." *Lewis*, 858 F.3d at 870. Specifically, the Fourth Circuit held that the ALJ improperly discounted the claimant's subjective complaints "based solely on the lack of objective evidence" supporting the claimant's assertions. *Id.* at 866. Social Security regulations do not permit an ALJ to "reject [a claimant's] statements about the intensity and persistence of [] pain or other symptoms or about the effect [those] symptoms have on [a claimant's] ability to work *solely* because the available objective medical evidence does not substantiate [his or her] statements." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)) (emphasis added); *see* SSR 96-7p, 1996 WL 374186, at *1 ("An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."). Rather, the Fourth Circuit emphasized that the ALJ failed to "explain in his decision what statements by [the claimant] undercut [the] subjective evidence…as limiting [the claimant's] functional capacity." *Lewis*, 858 F.3d at 866. Accordingly, the *Lewis* Court remanded because the ALJ failed to cite sufficient evidence of the claimant's own statements to discredit her credibility. Likewise, Mr. Ellentuck contends the ALJ "failed to identify the statements" he made that the ALJ "found to be not entirely credible." [ECF No. 13-1, 5].

The Commissioner, meanwhile, contends that, pursuant to SSR 96-7p, 1996 WL 3741186 (S.S.A. July 2, 1996), the ALJ properly evaluated Mr. Ellentuck's credibility. [ECF No. 14-1, 8-10]. In effect at the time of the ALJ's decision, SSR 96-7p provides that, in assessing a claimant's credibility, "the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7P (S.S.A. July 2, 1996). Defendant argues that the ALJ complied with this standard by citing Mr. Ellentuck's medical records, medical history, daily activities, treatment regimen, and reports of treating and examining practitioners. [ECF No. 14-1, 9-10].

I disagree that the ALJ erred in finding that Mr. Ellentuck was "not entirely credible." (Tr. 26). First, the scope of the *Lewis* ruling need not be determined in the instant case because the ALJ, in discounting Mr. Ellentuck's credibility, expressly cited sufficient evidence of his own statements that were inconsistent with his allegations of symptoms. For example, the ALJ cited Mr. Ellentuck's Neurology Center medical records, which demonstrated that, from September to August of 2013, he "did not have any significant complaints," despite having ulnar neuropathy. (Tr. 25-26). Further, the ALJ noted Mr. Ellentuck's admissions that his pain-management medications were somewhat effective, effective at controlling his worst symptoms, and that he experienced a 30% improvement in pain symptoms after receiving cervical steroidal injections and radiofrequency ablation. (Tr. 27). Finally, the ALJ considered Mr. Ellentuck's statements that on a typical day, he is able to dress, bathe, attend doctor's appointments, drive an automobile, feed himself, and that his sleep quality has improved. (Tr. 25, 27). Thus, the ALJ adequately "explain[ed] in [his] decision what statements by [Mr. Ellentuck] undercut [the] subjective evidence…as limiting [his] functional capacity." *Lewis*, 858 F.3d at 866. Moreover, the ALJ provided substantial objective record evidence to support his conclusion. *See* (Tr. 14-19); *see also* SSR 96-7p, 1996 WL 374186, at *6 (noting that "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is [] one factor that the adjudicator must consider in assessing an individual's credibility."); *see Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (citation omitted). Accordingly, the ALJ, by considering Mr. Ellentuck's "objective medical evidence, . . . daily activities, . . . [and subjective] description[s] of pain," properly assessed his credibility. *Bostic v. Astrue,* 474 F. App'x 952, 954 (4th Cir. 2012). Remand on this basis is therefore unwarranted.

## II.     Residual Functional Capacity ("RFC") Issue

Mr. Ellentuck next argues that the ALJ erroneously assessed his RFC by: (a) failing to include his moderate limitations with regard to concentration, persistence, or pace in his RFC assessment in violation of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); and (b) failing to provide an adequate narrative discussion (citing *Mascio*, 780 F.3d at 636 (stating that the RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations")). [ECF No. 13-1, 6-9].

### A. *Mascio* Issue

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Mascio*, 780 F.3d at 638. At step three of the sequential evaluation, the ALJ determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listings 12.00 et. seq., pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id*. at § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id*.

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id*. at § 404.1520a(c)(4). In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See*, *e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id*. at § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id*. at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id*. Further, the regulations offer little guidance on the meaning of "moderate" limitations.

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE – and the corresponding RFC assessment – did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir.

2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id*.

In this case, the ALJ concluded at step three of the sequential process that Mr. Ellentuck had "moderate difficulties" with respect to concentration, persistence, or pace. (Tr. 23). He then found that Mr. Ellentuck had "the [RFC] to perform light work . . . [and] can constantly understand, remember, and carry out instructions concerning simple, routine tasks; occasionally understand, remember, and carry out instructions concerning complex tasks; constantly make simple decisions; and occasionally make complex decisions." (Tr. 24).[1]

Pursuant to *Mascio*, I find that the ALJ provided adequate explanation of how Mr. Ellentuck's RFC assessment accounts for his "moderate difficulties" in concentration, persistence, or pace. Specifically, the ALJ considered: (1) Dr. Panagos's May, 2015 opinion that Mr. Ellentuck "would need to take unscheduled breaks and would be absent more than four days per month" because of his mental symptoms; (2) Dr. Griffin's June, 2015 opinion that Mr. Ellentuck "would be off task 30% or more of an 8-hour workday, would only be able to perform work less than 50% efficiently as an average worker, and would be absent from work 5 days or more;" and (3) Mr. Ellentuck's consultative statements indicating "he does have some difficulties with . . . concentration." (Tr. 27, 29). The ALJ, however, gave "little weight" to these opinions because they were "not supported with sufficient explanation and [were] inconsistent with the [] evidence of record." *Id.* Further, the ALJ found Mr. Ellentuck's statements concerning the "intensity, persistence, and limiting effects" of his mental impairments "not entirely credible" and not "as severe as he has alleged." (Tr. 26). As such, the ALJ instead relied heavily on Mr. Ellentuck's medical records and the 2013 opinions of Dr. Vaidya. (Tr. 27-30). The medical records demonstrated that Mr. Ellentuck: (1) had "been noted as alert and oriented, and his memory and attention have been noted as within normal limits;" and (2) had "intact judgment and insight and an appropriate affect." (Tr. 28). Moreover, Dr. Vaidya opined that Mr. Ellentuck was "oriented to time, place, and person, . . . perform[ed] well on an abstract thinking test[,] . . . and should be encouraged to return to work." *Id.* Finally, though he found Mr. Ellentuck's impairments not as severe as alleged, the ALJ, nonetheless, accounted for Mr. Ellentuck's assertions with respect to concentration, stating: "the above residual functional capacity has accounted for such limitations." (Tr. 29). As such, the ALJ complied with *Mascio*.

---

[1] Under both *Mascio* and the Social Security regulations, it was improper for the ALJ to base his determination as to Mr. Ellentuck's concentration, persistence, or pace on his difficulties performing complex tasks, rather than his ability to stay on task. *See Mascio*, 780 F.3d at 638; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3) (noting that a claimant "may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks. Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion."). Regardless, because it is readily apparent from the opinion what the ALJ intended by finding a moderate limitation in concentration, persistence, or pace, remand is not necessary.

### B. RFC Narrative Discussion

Social Security regulations require an ALJ to include "a narrative discussion of [the] claimant's symptoms and medical source opinions." *Thomas v. Comm'r, Soc. Sec.*, 2011 WL 6130605, at *4 (D. Md. Dec. 7, 2011). In doing so, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000). With respect to physical RFC, "[e]xertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: [s]itting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Meanwhile, nonexertional capacity considers limitations not dependent on an individual's physical strength including "postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision)[,]" activities. *Id.* at *6.

Here, the ALJ expressly considered Mr. Ellentuck's physical and mental abilities throughout his RFC analysis, pursuant to subsections (b) and (c) of 20 C.F.R. 404.1545.[2] First, incorporating nonmedical evidence into his analysis, the ALJ considered Mr. Ellentuck's daily activities of: (1) dressing, bathing, and feeding himself; (2) driving an automobile; (3) attending doctor's appointments; and (4) engaging in physical therapy exercises. (Tr. 25, 27). Second, the ALJ relied heavily on Mr. Ellentuck's medical records, which: (1) "reflect that his treatment regimen appears to be effective in controlling many of his symptoms;" (2) demonstrate that his "exams have been fairly normal" with a normal gait, balance and posture and normal strength and sensation; and (3) evidence that his mental symptoms have improved over time and that his "mental status exams . . . have been fairly normal." (Tr. 26-28). The evidence cited by the ALJ thus fully supports his finding that Mr. Ellentuck can perform "light work."

### III. Conclusion

For the reasons set forth above, Mr. Ellentuck's Motion for Summary Judgment [ECF No. 13] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 14]. is GRANTED. The Clerk is directed to CLOSE this case.

---

[2] Mr. Ellentuck also argues that the ALJ failed "to explain his determination that he had moderate difficulties in concentration, persistence, or pace, as required by 20 C.F.R. §404.1520a (2017)." [ECF No. 13-1, 9]. Under the "special technique," assessing "functional limitations is a complex . . . process that requires" consideration of "all relevant evidence," including clinical signs and laboratory findings, the effects of symptoms, and how functioning may be affected by "chronic mental disorders, structured settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c)(1). I find, however, that the evidence relied upon by the ALJ (including that cited above), provides sufficient explanation to satisfy §404.1520a.

      Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

                                    Sincerely yours,

                                    /s/

                                  Stephanie A. Gallagher
                                  United States Magistrate Judge